UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

      v.                                  Crim. Action No. 1:12-CR-84

Elias Joseph,

      Defendant.

## **OPINION AND ORDER**
(Doc.12)

Defendant Elias Joseph has been indicted by the federal grand jury in the District of Vermont. He stands accused of entering the United States being an alien on or about June 11, 2012, having previously been removed from the United States in violation of 8 U.S.C. § 1326. Presently before the Court is Joseph's motion (Doc. 12) to reconsider the order of detention entered on June 14, 2012. Joseph contends that conditions of release should be set, arguing that the factors set forth in 18 U.S.C. § 3142 militate in favor of his release on conditions pending trial. Specifically, Joseph asserts that he has a complete defense to the accusation. Joseph argues that he is a citizen of the United States, having benefitted from derivative United States citizenship pursuant to a now-repealed version of 8 U.S.C. § 1432(a) through his mother, who was naturalized as a United States citizen in 1988 when Joseph was a minor. The Government opposes release, asserting that Joseph's claim to derivative United States citizenship is deficient, as evidenced by a denial of his application for citizenship in 2010 by Citizen and Immigration Services

("CIS"), an agency of the United States Department of Homeland Security ("DHS"). For the reasons set forth below, the motion for reconsideration is GRANTED.

## I. Findings of Fact

Elias Joseph was born in Quebec on August 8, 1973 from the union of Elias Joseph, Sr. and Evelyn Ridore. (Doc. 12-1.) It appears that Joseph and his family moved to New York City shortly after his birth, and he was raised there. His mother and father were divorced in New York on January 10, 1984. His mother was awarded custody of Joseph when Joseph was approximately nine years old. (Doc. 12-2.) On September 28, 1988, when Joseph was approximately fifteen years old, Evelyn Ridore was naturalized as a United States citizen. (Doc. 12-3.) On December 8, 1989 Joseph was granted an I-130 immigrant visa by the United States Immigration and Naturalization Service ("INS") the predecessor agency to CIS. (Doc. 15-1.) On February 22, 1991, Joseph, then age seventeen, applied for lawful permanent residence ("LPR") status with the INS. (Doc. 15-2.) He was granted LPR status by INS on November 13, 1991 after having attained the age of 18. According to a report prepared by the United States Pretrial Services Office, Joseph was convicted of Larceny in New York in 1993 and again in Connecticut in 1996. In 1999, he was convicted in New York of a series of new offenses – including Assault with Intent to Cause a Serious Injury, Criminal Possession of a Weapon of a Loaded Firearm, and Assault with Intent to Cause Injury to an Officer – all of which apparently arose from one episode occurring in 1996.

On December 21, 2009, Joseph applied for United States citizenship through CIS, asserting that he benefitted from derivative United States citizenship through his mother's

naturalization when he was a minor. His application was denied by the District Director in a written decision dated June 16, 2010 on the grounds that Joseph was granted LPR status *after* his 18th birthday. (Doc. 16-1.) The District Director did not address the fact that Joseph's LPR application had been submitted before his 18th birthday. Joseph did not appeal this administrative decision.

On January 27, 2012, Joseph, travelling with two other men in a Mercedes arriving from Canada, presented himself for inspection at the Port of Entry at Highgate Springs, Vermont. He was denied admission into the United States. Later that evening, the same Mercedes was observed in the United States near the border. The vehicle was stopped by border patrol agents, who noticed that only the other two men from the earlier inspection were in the vehicle. The agents found Joseph hiding in a nearby farm vehicle. Joseph was arrested and charged, and later convicted in this Court by plea of guilty of misdemeanor entry by an alien without inspection, in violation of 8 U.S.C. § 1325. Joseph was represented by experienced defense counsel at every stage of the proceedings. Sentenced to time served, Joseph was turned over to immigration authorities. According to the Government, Joseph underwent administrative removal proceedings and was ordered removed from the United States in April of 2012. (Doc. 1-1.) There is no evidence before the Court that Joseph sought review of this removal order, and Joseph was physically removed from the United States.

On June 11, 2012, Joseph was again encountered by border patrol agents on Interstate 91 driving a vehicle southbound approximately five miles south of the Port of Entry at Derby Line, Vermont. According to the criminal complaint, Joseph claimed that

3

he had been visiting a friend in Newport, Vermont, though he could not identify that friend. Joseph was arrested and charged with Re-Entry by an Alien after Removal, in violation of 8 U.S.C. § 1326. He was later indicted for the same offense, and that charge is pending in this Court.

At his initial appearance, the Government moved for Joseph's detention pursuant to 18 U.S.C. § 3142, arguing that Joseph was illegally present in the United States as he had no lawful immigration status and that he was subject to removal by the DHS if released. Joseph, through counsel, argued that he had lifelong family and community ties to New York City, and that he had left the United States for the sole purpose of taking care of his father's affairs following his father's death in Haiti. Joseph was ordered detained by the undersigned Magistrate Judge based on a finding that the Government had satisfied its burden to establish that Joseph was a risk of flight.

## II.     Standards Governing Release or Detention

Section 3142 of Title 18, enacted as part of the Bail Reform Act of 1984, *see* 18 U.S.C. §§ 3141-3156 ("Bail Reform Act"), requires that an accused be detained pending trial where, following a hearing in accordance with § 3142(f), "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The factors the judicial officer must consider "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," include "the nature and circumstances of the offense charged, including whether the offense is a crime of

violence," or involves a firearm; "the weight of the evidence against the person;" "the history and characteristics of the person," including his "physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;" and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). In this case, the Government does not assert that Joseph should be detained because his release would pose a "danger to any person or the community."

Section 3142(e) permits a district court to order pretrial detention if, after a hearing, it concludes that "no condition or combination of conditions will reasonably assure the appearance of the person . . . ." To support such a conclusion, the court must find by a preponderance of the evidence that: (1) the defendant, if released, presents an actual risk of flight; and (2) no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court. *See United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2000); *United States v. Shakur*, 817 F.2d 189, 194-95 (2d Cir. 1987).

## III. Joseph's Motion to Reconsider

As stated earlier, Joseph has filed a motion seeking reconsideration of this Court's order of detention. Despite his earlier plea of guilty to a misdemeanor charge of illegal entry by an alien, Joseph now asserts that he derived automatic United States citizenship as a minor from his mother's naturalization. Joseph contends that the Government cannot

5

prove his alienage beyond a reasonable doubt, a fundamental element of a § 1326 violation, and that his citizenship is a complete defense to this prosecution. He argues that the Court should consider this claim in conjunction with its evaluation of the second prong of the § 3142(g) factors, particularly the strength of the evidence against the accused. By extension, Joseph argues that he has no incentive to flee from a charge that lacks substantive merit.

There is no dispute that Joseph has almost lifelong community and family ties to New York. New York has been his home, and he persuasively argues that he has no incentive to flee to Haiti. Although Joseph has a criminal record of convictions, he points out that his prior criminal conduct occurred over fifteen years ago. The Government asserts that Joseph's lack of immigration status and the prospect of another removal from the United States is an incentive to flee from further proceedings. In this context, the question of release or detention depends greatly on the strength of the Government's evidence regarding the essential element of the charged offense, Joseph's alienage.

The Government argues that Joseph has not presented information that was unknown to him at the time of the original detention hearing. 18 U.S.C. § 3142(f)(2) permits an accused who has been ordered detained to seek reconsideration of that order only upon a showing of information not known at the time of the initial hearing. Although the derivative citizenship claim was known to Joseph, he has only recently gained access to his full administrative file maintained by DHS (commonly known as an "A-file"). The Court construes this access as new information, and thus will reconsider the order of detention.

The Government also argues that there is a legal bar to consideration of Joseph's motion, correctly asserting that the Court should not adjudicate citizenship claims. The Government over-generalizes. The Court is not considering whether to grant citizenship to Joseph, as such action would clearly be beyond its jurisdiction. Rather, the Government has accused Joseph of being an alien as part of its accusation against Joseph that he has committed a criminal violation of 8 U.S.C. § 1326. In fact, it is Joseph's status as a removable alien subject to removal that led to the order of detention. A district court has jurisdiction over criminal offenses under 18 U.S.C. § 3231. Congress has expressly directed federal courts to consider "the weight of the evidence" against an accused in the evaluation of the question of release or detention under 18 U.S.C. § 3142(g)(2). It is in this context alone that the Court considers Joseph's argument.

## IV. Standards Governing Derivative Citizenship Claims

Congress enacted the derivative citizenship statute to ensure that "alien children whose real interests were located in America with their custodial parent, and not abroad, should be automatically naturalized." *Duarte-Ceri v. United States*, 630 F.3d 83, 89-90 (2d Cir. 2010) (quoting *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 397 (5th Cir. 2006)). The statute "implements the underlying intention of our immigration laws regarding the preservation of the family unit." H.R. REP. NO. 82-1365, at 24 (1952), *reprinted in* 1952 U.S.C.C.A.N. 1653, 1680. A child who achieves derivative citizenship through this provision does so automatically upon fulfilling certain specified conditions. *Ashton v. Gonzales*, 431 F.3d 95, 97 (2d Cir. 2005). Joseph presents his derivative citizenship claim under the former version of 8 U.S.C. § 1432(a), as Congress repealed §

1432(a) with its enactment of the Child Citizenship Act of 2000 ("CCA"), § 103, Pub. L. No. 106-395, 114 Stat. 1631. The CCA had an effective date of February 27, 2001, 120 days following its enactment. Because most of the relevant events regarding Joseph's claimed derivative citizenship occurred prior to the CCA's effective date, § 1432(a) controls the analysis. *Ashton*, 431 F.3d at 97; *Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005) ("derivative citizenship is determined under the law in effect at the time the critical events giving rise to eligibility occurred") (citations omitted).

Section 1432(a) of Title 8, United States Code, provided at the relevant time as follows:

> A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:
>
> (1) The naturalization of both parents; or
>
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
>
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
>
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
>
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8

8 U.S.C. § 1432(a) (1999), *repealed by* CCA, § 103, Pub. L. No. 106-395, 114 Stat. 1631. The first two subsections have no relevance here. On the other hand, Subsections (3), (4), and (5), in combination, provide Joseph with an avenue to assert his claim to derivative citizenship.

There can be no dispute that Joseph meets the requirements of subsections (3) and (4) of § 1432(a). His mother, having legal custody of her son Joseph, was naturalized before Joseph turned 18. Thus, the Court considers whether Joseph was residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of his mother or whether he thereafter began to reside permanently in the United States while under the age of 18 years.

In *Ashton v. Gonzales, supra*, the court of appeals determined that petitioner Ashton did not meet the requirements for derivative citizenship under § 1432(a) because Ashton's subjective intent to reside permanently in the United States, coupled with his presence here, was not sufficient to establish that he began to reside permanently in the United States while he was under the age of 18. 431 F.3d at 98. In *Ashton*, the Government argued that the phrase "lawful admission for permanent residence" required a grant of actual LPR status prior to age 18. The court rejected Ashton's claim that mere subjective intent and presence was sufficient to satisfy the statute. However, in dicta, the court expressed doubts regarding the Government's contention that § 1432(a)(5) required actual LPR status, stating:

> We have no doubt from the structure and context of § [1432](a) as a whole that a child who acquires lawful permanent residency would certainly satisfy § [1432](a)'s requirements, and we do not rule out that

> some lesser official objective manifestation might also be sufficient. Here, however, because Ashton, who neither applied for nor received lawful-permanent-resident status while under 18 years of age, cannot point to any such official objective manifestation, his claim for citizenship fails.

*Id*. at 99. The court concluded its discussion by stating that, "[u]ltimately, the proper interpretation of [§ 1432](a) is a question we need not reach." *Id*.

Quoting *Ashton*, Joseph argues that the pendency of his application for permanent residency before his 18th birthday constitutes a "lesser official objective manifestation," sufficient to demonstrate lawful admission for permanent residency under § 1432(a)(5). (Doc. 12 at 1, ¶ 2; Doc. 15 at 1.) The Government correctly points out, however, that this language in *Ashton* is dicta. (Doc. 16 at 5.) The *Ashton* court did not expressly hold that the conditions of § 1432(a)(5) can be satisfied by a pending application for status. Joseph supplements his contention by asserting that a derivative citizenship claim should also involve a balancing of equities. (*See* Doc. 18.) In *Poole v. United States*, 522 F.3d 259 (2d Cir. 2008), the court of appeals returned a petition challenging an order of removal to the Board of Immigration Appeals for further consideration of a derivative citizenship claim where Poole's mother (from whose naturalization Poole claimed derivative citizenship) had her naturalization petition pending for over two years. The court of appeals noted that, had immigration authorities granted the petition in a more expeditious manner, Poole would have benefitted from derivative citizenship. *Id*. at 265. Joseph's successful LPR application, which was filed before his 18th birthday, remained pending before immigration authorities for several months. Had his application been granted *before* Joseph turned 18 instead of *after* that event, Joseph may have automatically

10

derived derivative citizenship. As the Government accurately points out, however, the *Poole* decision did not involve an interpretation of the statutory provision at issue here, 8 U.S.C. § 1432(a)(5). Nor did the court in *Poole* compel immigration authorities to employ "equitable balancing," as urged by Joseph in this case.

Since the Second Circuit's decision in *Ashton*, two other courts of appeals have provided guidance on the question left unaddressed in *Ashton*. In *Romero-Ruiz v. Mukasey*, 538 F.3d 1057 (9th Cir. 2008), the Ninth Circuit held that an immigrant who did not have lawful permanent resident alien status at the time of his mother's naturalization was not eligible for derivative citizenship. The court, applying the same version of § 1432(a) as applicable here, held that an immigrant must show not only that he or she was permanently residing in the United States but also that he or she was residing in some lawful status while under the age of 18. The court concluded that the phrase, "or thereafter begins to reside permanently" in § 1432(a)(5), alters only the *timing* of the legal residence requirement, not the requirement of *legal* residence. *Id*. at 1062. In *United States v. Forey-Quintero*, 626 F.3d 1323 (11th Cir. 2010), defendant Forey-Quintero was accused of committing a violation of § 1326. Following his trial on stipulated facts, Forey-Quintero challenged his conviction on appeal. Like Joseph, Forey-Quintero claimed derivative citizenship from his mother's naturalization under the former version of § 1432(a). The Eleventh Circuit joined the Ninth Circuit in concluding that the phrase, "begins to reside permanently in the United States while under the age of eighteen years" as set forth in in § 1432(a)(5), requires the child to acquire the status of an alien lawfully admitted for permanent residence *before* turning 18. 626 F.3d at 1326.

11

Similarly, the Board of Immigration Appeals has held that lawful permanent resident status is required for derivative citizenship claims. *In re Nwozuzu*, 24 I. & N. Dec. 609 (BIA Sept. 10, 2008). It bears noting however that unlike the defendant here, there is nothing to suggest that the petitioner in *Nwozuzu* had sought LPR status prior to his 18th birthday.

As clear as the authority from other circuits may be, the Second Circuit in *Ashton* has left Joseph with some opportunity upon which to seek a re-opening of his claim to citizenship, and to argue to immigration authorities that his then pending LPR application was indeed that "lesser objective official manifestation" of permanent residence needed for derivative citizenship. In any event, the Government faces certain challenges to prove *beyond a reasonable doubt* that Joseph is an alien as set forth in 8 U.S.C. § 1326. For these reasons, the Court finds that the second factor of the § 3142 analysis –strength of the government's evidence –does not weigh in favor of or against detention.

## V.     Conclusions of Law

The question before the Court is not merely whether Joseph is a risk of flight, but also whether there is any condition or combination of conditions that the Court could set to reasonably assure his continued appearance. Joseph is presumed innocent of the charged offense and the Government bears the burden of showing that no conditions exist to assure his continued appearance.

The Court concludes that there are conditions that will provide the required assurance. It is clear that Joseph has a compelling incentive to return to this Court to contest the accusation and to seek recognition by immigration authorities of his derivative

citizenship claim. Haiti offers him little. He has strong family ties and lifelong roots in New York. His prior criminal record, though serious, is dated. Nevertheless, the risk of flight cannot be discounted. Joseph faces the prospect of removal should his claim of citizenship be deficient. He faces a certain period of incarceration if convicted. Moreover, no satisfactory explanation has been advanced for Joseph's failure to seek judicial review of the CIS District Director's 2010 decision to deny his citizenship application. This failure may ultimately prove fatal to Joseph's claim. Nor has any reason been advanced to explain Joseph's admission under oath during his plea of guilty to the misdemeanor charge of illegal entry by an alien that he was an alien. These concerns do not, however, lead to the conclusion that there is absolutely no condition or combination of conditions that would assure Joseph's continued appearance. These concerns do compel the conclusion that release conditions must be strict. Accordingly, release conditions will include electronic monitoring, requiring the implementation of a telephone "land line" at an approved address to accomplish electronic monitoring, strict in-person reporting conditions, and a substantial cash bond. Of course, Joseph also faces continued administrative detention by DHS, but that matter is to be determined by an administrative tribunal, not this Court.

For these reasons, Joseph's motion for reconsideration of the Court's June 14, 2012 order of detention is GRANTED. A hearing shall be scheduled promptly to consider specific conditions of release consistent with the concerns expressed in this Opinion and Order.

Dated at Burlington, in the District of Vermont, this 10th day of August, 2012.

                                                   /s/ John M. Conroy
                                                 John M. Conroy
                                                 United States Magistrate Judge